UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
BOBBY MITCHELL,

              Plaintiff,

    - against -

THE BROOKLYN HOSPITAL CENTER,

              Defendant.
----------------------------------------------------------X

**MEMORANDUM & ORDER**
14-CV-4359 (RRM) (LB)

ROSLYNN R. MAUSKOPF, United States District Judge.

The issue before this Court is whether plaintiff *pro se* Bobby Mitchell should be enjoined from filing any further actions in this Court against defendant The Brooklyn Hospital Center ("Brooklyn Hospital") alleging that a pay disparity exists between Mitchell and his co-workers. (Mot. for Sanctions Pursuant to Rule 11 (Doc. No. 42).) For the reasons set forth herein, defendant Brooklyn Hospital's motion for a filing injunction sanction is DENIED.

## BACKGROUND

Mitchell began working at Brooklyn Hospital in its Respiratory Care Department in 1976 and worked at the Hospital nearly continuously until at least 2015.[1] (Am. Compl. ("Fourth Am. Compl.") (Doc. No. 20).) Mitchell and other employees in the Respiratory Care Department are parties to a collective bargaining agreement ("CBA"). Memorandum & Order at 3, *Mitchell v. The Brooklyn Hosp. Ctr.*, No. 01-CV-5393 (CBA), ECF No. 71. (Mem. of Agreement (Doc. No. 44-2).) The CBA sets forth wage scales that provide for respiratory care practitioners to be paid different hourly wages based on an individual practitioner's credentials and experience. (Mem. of Agreement.) The wage scales of individuals who have Registered Respiratory Therapist Credentials ("RRT Credentials") are higher than those of individuals who have Certified

---

[1] On December 9, 2015, Mitchell filed a letter stating that he would be resigning from Brooklyn Hospital on December 21, 2015. (Mem. of Law Reply/Decl./Letter of Resignation ("12/9/15 Letter") (Doc. No. 48).)

1

Respiratory Therapy Credentials ("CRT Credentials"), and individuals with CRT Credentials are paid more than those who do not have credentials. (*Id.*) Mitchell has CRT Credentials. (National Board for Respiratory Care Directory Profile for Bobby C. Mitchell (Doc. No. 44-3) at 2.)

Mitchell has been the plaintiff in three suits in this Court against Brooklyn Hospital alleging discrimination, including pay disparities relating to his credentials, and retaliation.

In 1997, Mitchell sued Brooklyn Hospital alleging discrimination and retaliation based on his race, color, age, and disability. *See Mitchell v. Brooklyn Hosp. Ctr., et al.*, No. 97-CV-739 (JBW). In that case, one of Mitchell's claimed grounds for discrimination was that the Hospital paid Russell Burnett, a respiratory care practitioner with CRT Credentials, at a higher hourly rate than Mitchell. On October 26, 1999, the Honorable Judge Jack B. Weinstein issued a Stipulation and Order of Dismissal with Prejudice, dismissing almost all of Mitchell's claims, including the Burnett wage claim.

Mitchell again filed suit against Brooklyn Hospital in 2001 based on claims of discrimination and retaliation. *See Mitchell v. The Brooklyn Hosp. Ctr.*, No. 01-CV-5393 (CBA). He included claims of wage disparities in this suit as well, comparing his salary to that of Burnett, and another respiratory care practitioner with CRT Credentials, Hector Abarro. On July 14, 2004, the Honorable Judge Carol B. Amon granted Brooklyn Hospital's motion for summary judgement in its entirety, dismissing all of Mitchell's claims. Memorandum & Order at 1, *Mitchell v. The Brooklyn Hosp. Ctr.*, No. 01-CV-5393 (CBA), ECF No. 71. The Second Circuit affirmed this judgment on May 29, 2009. *Mitchell v. Brooklyn Hosp. Ctr.*, 326 F. App'x 44, 45 (2d Cir. 2009).

In the instant case, Mitchell claims for the third time in this Court that Brooklyn Hospital discriminated and retaliated against him, and that he was the victim of a pay disparity. He filed

the original complaint *pro se* in the Supreme Court of the State of New York, Kings County, on June 17, 2014. (Notice of Removal (Doc. No. 1).) Brooklyn Hospital removed it to this Court on July 17, 2014. (*Id.*) Although Mitchell initiated the case *pro* se, he was represented by counsel, Lawrence Levine, from September 5, 2014 until the Court granted Levine's motion to withdraw as Mitchell's attorney on September 11, 2015. (Notice of Appearance (Doc. No. 14); 9/11/15 Order.) During the first five months that this case was pending, Mitchell filed four amended complaints, three of which were filed by counsel. (Pl. Bobby Mitchell Obj. ("First Am. Compl.") (Doc. No. 9); 9/30/14 Am. Compl. ("Second Am. Compl.") (Doc. No. 17); 11/5/14 Am. Compl. ("Third Am. Compl.") (Doc. No. 18); Fourth Am. Compl.) In these complaints, Mitchell alleged, *inter alia*, mistreatment by Brooklyn Hospital through the Director of its Respiratory Care Department, Mohammed H. Shajahann, in 2012 and 2013. (*See, e.g.*, Fourth Am. Compl. at ¶¶ 16–19.) Mitchell also alleged that Brooklyn Hospital "further engage[d] in discriminatory, biased and unfair practices by refusing to recognize Plaintiff's correct job title and position and paying him the proper salary commensurate with his licensing and academic qualifications." (*Id.* at ¶ 22.) According to Mitchell, Brooklyn Hospital, "while acknowledging Plaintiff was grandfather protected under the statute, refused to pay Plaintiff the salary of a Respiratory Therapist, resulting in Plaintiff earning $5000 to $8000 less per year since 2005 than respiratory therapists with comparable skills and experience." (*Id.* at ¶ 25.)

Brooklyn Hospital filed a letter on December 5, 2014 requesting a pre-motion conference regarding its proposed motion to dismiss, arguing that, "Mitchell regurgitates the same claims that he is not being paid 'as a licensed registered respiratory therapist' that were dismissed on summary judgment in 2004 by this Court." (Letter Mot. for Pre-Mot. Conference (Doc. No. 21).) At the pre-motion conference on February 12, 2015, the Court granted Brooklyn Hospital leave to file its proposed motion to dismiss and motion for Federal Rule of Civil Procedure

("Rule") 11 sanctions. Following the pre-motion conference, Levine sought to withdraw as Mitchell's counsel. (2/13/15 Letter (revised) as Directed by the Court (Doc. No. 27).) Levine wrote, "Bobby Mitchell and I have mutually agreed to terminate our attorney-client relationship." (*Id.*) He continued, "I have advised Mr. Mitchell to discontinue his discrimination action against The Brooklyn Hospital Center." (*Id.*) On February 19, 2015, this Court denied Levine's motion to withdraw and ordered that "[a]s Mr. Levine has advised plaintiff to discontinue this action, plaintiff is hereby Ordered to file, no later than February 27, 2015, either a Stipulation of Dismissal, signed both by plaintiff and Mr. Levine, or a letter, also to be signed by both plaintiff and Mr. Levine, that plaintiff intends to pursue this action." (2/19/15 Order Denying Leave to Withdraw.) Levine filed a stipulation of dismissal signed by Mitchell on March 4, 2015. (Stipulation of Dismissal (Doc. No. 31).) On September 11, 2015, the Court granted Levine's motion to withdraw as Mitchell's attorney. (9/11/15 Order; First Mot. to Withdraw as Att'y (Doc. No. 29).)

The Hospital moved for sanctions, specifically requesting "an injunction preventing Plaintiff, who has repeatedly sued his current employer Brooklyn Hospital, from again bringing the same baseless claim – that a pay disparity exists between Plaintiff and his coworkers (who have a certification that Plaintiff does not have)." (Mem. in Supp. Mot. for Sanctions Pursuant to Rule 11 (Doc. No. 43) at 1; *accord* Mot. for Sanctions Pursuant to Rule 11; Reply in Supp. Mot. for Sanctions Pursuant to Rule 11 (Doc. No. 46).) Mitchell replied with hundreds of pages including attachments, arguing that his claims are not frivolous and reflect events that occurred after the 2004 decision in this Court. (11/13/15 Resp. in Opp'n Mot. for Sanctions Pursuant to Rule 11 ("11/13/15 Resp. in Opp'n") (Doc. No. 45) at 6, 17; 12/3/15 Resp. in Opp'n Mot. for Sanctions Pursuant to Rule 11 ("12/3/15 Resp. in Opp'n") (Doc. No. 49) at 14–20.) In his opposition filings, Mitchell requests, *inter alia*, (1) "a favorable summary [j]udgment in favor of

4

the Plaintiff," (2) that "the Court [] sanction the Defendant to stop all such acts / actions, of abuse" by Shahajann, (3) "that there be no deliberate retaliatory interference in my retirement process or benefits: specifically my union pension," (4) damages, and (5) that "Defendant[] be ordered to make an upward adjustment in Plaintiff's salary to be equal or greater than that of the replacement worker commensurate with the relative experience, seniority and credentials of Plaintiff and the replacement employee." (11/13/15 Resp. in Opp'n at 9, 32, 34–35.) Mitchell also states that "I say/ and agree, to the Court, there will be no more pursuits by Plaintiff concerning salary of past issues in this case." (*Id.* at 30.)

On December 9, 2015, Mitchell filed a letter stating that the actions of Brooklyn Hospital and its Director of Respiratory Care have "forced [Mitchell] into retirement" and that Mitchell would no longer be employed at the Hospital as of December 21, 2015. (12/9/15 Letter.) The letter concludes, "[t]here will be no further action on my part to these matters, this I Bobby Mitchell do Swear." (*Id.*)

## STANDARD OF REVIEW

Rule 11(b) provides that any court filing or other representation to the court constitutes a certification that

> to the best of the [filer's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;

Fed. R. Civ. P. 11(b).

5

Rule 11(c), in turn, permits a court to impose "appropriate" sanctions for violations of Rule 11(b). Fed. R. Civ. P. 11(c)(1). Sanctions imposed under Rule 11(c) "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). "When a court determines that Rule 11 sanctions are appropriate, it 'has significant discretion in determining what sanctions, if any, should be imposed for a violation.'" *E. Gluck Corp. v. Rothenhaus*, No. 08-CV-3466 (VM), 2008 WL 2944624, at *3 (S.D.N.Y. July 31, 2008) (quoting Fed. R. Civ. P. 11 Advisory Committee Note); *see also Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004) ("Even if the district court concludes that the assertion of a given claim violates Rule 11, . . . the decision whether or not to impose sanctions is a matter for the court's discretion.").

In considering a motion for sanctions under Rule 11, this Court applies an "objective standard of reasonableness." *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 73 F.3d 1253, 1257 (2d Cir. 1996). Moreover, "Rule 11 is violated only when it is patently clear that a claim has absolutely no chance of success." *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986) (internal quotation marks omitted). Additionally, "[w]hen divining the point at which an argument turns from merely losing to losing *and* sanctionable, . . . courts [must] resolve all doubts in favor of the signer" of the pleading. *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (internal quotation marks omitted).

As to filing injunctions, "[t]he district courts have the power and the obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an

unnecessary burden on the courts and their supporting personnel." *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000) (internal quotation marks and alteration omitted); *see also Safir v. U.S. Lines Inc.*, 792 F.2d 19, 24 (2d Cir. 1986) ("'A district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation.'" (quoting *Abdullah v. Gatto*, 773 F.2d 487, 488 (2d Cir. 1985) (per curiam))).

"The filing of repetitive and frivolous suits constitutes the type of abuse [of the judicial process] for which an injunction forbidding further litigation may be an appropriate sanction." *Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996); *see also Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system." (internal quotation marks omitted)); *Lau*, 229 F.3d at 123 ("The issuance of a filing injunction is appropriate when a plaintiff abuses the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive proceedings." (internal quotation marks and alterations omitted)). The following factors should be considered in determining whether to restrict a litigant's future access to the courts:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigation has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Safir*, 792 F.2d at 24. "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Id.*

7

Before imposing a filing injunction, the court must first provide a litigant with notice and an opportunity to be heard. *Lau*, 229 F.3d at 123. If imposed, the filing injunction must be narrowly tailored so as to preserve the litigant's right of access to the court. *See Bd. of Managers of 2900 Ocean Ave. Condo. v. Bronkovic*, 83 F.3d 44, 45 (2d Cir. 1996) (holding that filing injunctions "must be appropriately narrow"); *see also SBC 2010–1, LLC v. Morton*, 552 F. App'x 9, 12–13 (2d Cir. 2013) (summary order) (affirming the district court's issuance of a filing injunction on the basis that, *inter alia,* it was "narrowly crafted").

## DISCUSSION

The Court has carefully considered the relevant factors supporting issuance of an injunction and concludes that the circumstances of this case do not warrant issuing a filing injunction as a sanction.

The first two *Safir* factors favor Brooklyn Hospital. As to the first factor, the litigant's history of litigation, Mitchell has filed three actions in this Court bringing the same allegation that he is the victim of a pay disparity. *See Iwachiw v. N.Y.C. Bd. of Educ.*, 194 F. Supp. 2d 194, 207 (E.D.N.Y. 2002) ("The first factor weighs heavy against the plaintiff. Since June of 1999, the plaintiff has filed nine separate complaints *pro se* in the United States District Court for the Eastern District of New York."). The second factor, the litigant's motive in pursuing the litigation, likewise weighs against Mitchell as his chances of prevailing in this matter appear slim. *Ex'r of N.Y. Estate of Kates v. Pressley & Pressley, P.A.*, No. 11-CV-3221 (JFB), 2013 WL 495415, at *6 (E.D.N.Y. Feb. 7, 2013) ("[T]his Court is hard-pressed to accept that plaintiffs here had 'an objective good faith expectation of prevailing' when they filed a lawsuit raising nearly identical claims and arguments as they had filed before, with little or no success" (citing *Buell ex rel. Buell v. Bruiser Ken*, No. 97-CV-1131 (EHN), 1999 WL 390642, at *5 (E.D.N.Y. Mar. 31, 1999))); s*ee also Iwachiw*, 194 F. Supp. 2d at 207.

The third factor, whether the litigant is represented by counsel, favors Mitchell because although he was represented by counsel during some of the pendency of this action, he initiated this case *pro se* and has otherwise proceeded *pro se*. *See Iwachiw*, 194 F. Supp. 2d at 208 ("The third factor . . . favors the plaintiff because he is proceeding *pro se*."). However, "a court's authority to enjoin vexatious litigation extends equally over *pro se* litigants and those represented by counsel, and a court's special solicitude towards *pro se* litigants does not extend to the willful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights." *Lipin v. Hunt*, 573 F. Supp. 2d 836, 845 (S.D.N.Y. 2008) (internal quotation marks omitted). Thus, this factor does not weigh heavily in Mitchell's favor.

The fourth factor, whether the litigant has caused needless expense to other parties and the courts, weighs against Mitchell. There is no doubt here that the Hospital has already lost substantial time and resources defending against Mitchell's filings. As of Mitchell's filing the stipulation of dismissal on March 4, 2015, Brooklyn Hospital had incurred $40,802.40 in legal fees and $4,131.91 in costs. (*See* Declaration of B. Hoey (Doc. No. 44) at ¶ 8).

Although many of these factors favor injunctive relief, including Mitchell's repeated use of the Court system to re-litigate the same claims, on balance, because Mitchell is *pro se* and because his complaint included allegations related to events that occurred after his previous cases were adjudicated, the Court will give Mitchell the benefit of the doubt and not impose sanctions at this time. *See Rodick*, 1 F.3d at 1350 (a court considering whether to impose Rule 11 sanctions must "resolve all doubts in favor of the signer"). "Although ignorance of the law is no excuse, the concept of res judicata and collateral estoppel is often challenging for many attorneys nonetheless pro se litigants with no legal education or skill." *Commins v. Habberstad BMW*, No. 11-CV-2419 (JFB), 2012 WL 956185, at *10 (E.D.N.Y. Mar. 20, 2012) (internal quotation marks and alteration omitted). In addition, "an injunction is a drastic measure [and] [t]he cases

in which courts have enjoined parties from bringing suits involve litigants with . . . longer histories of 'vexatious litigation' than plaintiff's." *Conway v. Brooklyn Union Gas Co.*, 236 F. Supp. 2d 241, 253 (E.D.N.Y. 2002) (collecting cases); *Safir*, 792 F.2d at 20, 24 (affirming issuance of filing injunction after plaintiff had filed eleven federal lawsuits); *Iwachiw v. N.Y. State Dept. of Motor Vehicles*, 396 F.3d 525, 528–29 (2d Cir. 2005) (affirming issuance of filing injunction after plaintiff had filed more than fifteen lawsuits); *In re Martin–Trigona*, 737 F.2d 1254, 1259 (2d Cir. 1984) (affirming issuance of filing injunction after plaintiff had "inundated" the District of Connecticut with his filings); *Ex'r of N.Y. Estate of Kates*, 2013 WL 495415, at *6 (issuing filing injunction after plaintiffs brought four actions in this District litigating the same claims and also initiated cases to litigate those claims in multiple state courts).

The Court is certainly not unsympathetic to the time, effort, and expense that Brooklyn Hospital has spent defending against Mitchell's repetitive claims and numerous voluminous filings. However, Mitchell has assured the Court multiple times that he will not bring suit against Brooklyn Hospital alleging these pay disparity claims again and the Court takes Mitchell at his word. (11/13/15 Resp. in Opp'n at 30; 12/9/15 Letter.) *See Safir*, 792 F.2d at 24 (holding that the ultimate question for a court to consider is "whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties").

"Duplicative litigation is, to be sure, clearly impermissible, and plaintiff must understand that further filing of overlapping pleadings may require sanctions." *Soling v. N.Y. State,* 804 F. Supp. 532, 539 (S.D.N.Y. 1992). The Court thus, in its discretion, declines to impose a filing injunction or any other sanction under Rule 11 on Mitchell at this time, but issues Mitchell a warning that any future filings of this nature alleging that a pay disparity exists between Mitchell and his co-workers will result in such a sanction. Mitchell has now attempted to re-litigate the same claim in this Court three times, costing Brooklyn Hospital, in this case alone, tens of

thousands of dollars.  The Court will not tolerate such conduct in the future and will not hesitate to impose sanctions on Mitchell if he brings this claim in this Court for a fourth time.  *See In re Martin-Trigona*, 737 F.2d at 1262 (a district court has "the power and the obligation to protect the public and the efficient administration of justice from [a vexatious litigant's] litigious propensities").  Such sanctions may include a filing injunction, payment of attorney's fees, a fine, or other sanctions within the Court's discretion.  *E. Gluck Corp.*, 2008 WL 2944624, at *3 (Finding that a court has "significant discretion" to determine what Rule 11 sanctions, if any, are appropriate, and that such sanctions can include "impos[ition of] a fine or penalty, an award of reasonable expenses and attorney's fees incurred as a result of the misconduct, or dismiss[al of] the action.").

## CONCLUSION

For the reasons set forth above, Brooklyn Hospital's motion for sanctions is DENIED. The Clerk of Court is respectfully directed to close this case in light of Mitchell's stipulation of dismissal and to mail a copy of the Memorandum and Order to plaintiff *pro se* and note the mailing on the docket.

SO ORDERED.

*Roslynn R. Mauskopf*

Dated: Brooklyn, New York  
      August 8, 2016

ROSLYNN R. MAUSKOPF  
United States District Judge